Judge Aldersert, can you hear us? We can hear you by telephone. Something happened. The equipment was tested Friday, but over the weekend a gremlin snuck in somewhere, either here or in Philadelphia. A Ninth Circuit gremlin got into it, I think. We can hear you perfectly and we can see you. It's good to see both of you. It's great to see you. Counsel, you have no problem hearing Judge Aldersert on this? Seeing it, very good. First matter is Valleys v. Sky Bank. Ms. Brady, good afternoon. May it please the Court, my name is Erin Brady. I represent the plaintiff appellant, Louis Valleys. I request three minutes for rebuttal. The issue presented is whether Sky Bank caused actual damage to Mr. Valleys when it understated his finance charge by $395, regardless of whether he pleads and proves detrimental reliance. We request reversal of the lower court's order granting Sky Bank's motion for summary judgment because detrimental reliance is not an element of a cause of action for actual damages stemming from a material violation. You are objecting to a provision in the statute that does not use the term detrimental reliance, correct? That's right, Your Honor. But that provision in the statute does state that actual damages can be awarded for any loss caused, I mean any loss that is caused by the error or the violation of the law. And that's really the test, is it not? You're right, Your Honor. The standard presented in 1640 is any actual damage sustained as a result of the violation. And did you prove what evidence is there of the loss caused by this violation? The evidence, Your Honor, is that the understatement of the finance charge constitutes an overcharge under the Act. Sky Bank's obligation was to disclose the terms of the legal obligation between the parties. Congress has told us that the key cost disclosures, including the finance charge and the annual percentage rate, both of which were understated here, are material disclosures. All right, they're material disclosures and there was a violation and so statutory damages were awarded, correct? Yes, statutory damages, we reached a settlement. All right, well then I don't understand how you are disputing the requirement that you prove the loss caused and you basically concede, do you not, that you cannot prove any real loss caused by this violation. Your Honor, no, we don't concede that. Our position is that Mr. Bailey sustained actual damages as a result of the violation without regard to detrimental reliance. Well, forget detrimental reliance. What dollar loss did he sustain specifically as a result of that? $395 in overcharges. First, the understatement of the finance charge by $395 deprived Mr. Bailey of a material term of the benefit of his bargain. So when we look at actual damages from a contract perspective as opposed to a fraud perspective, they're clear. He entered into a contract with an understated finance charge. It was understated by $395. By understating that finance charge, Sky Bank deprived him of the benefit of his bargain. Would you agree that the term actual damages presupposes a showing of causation on the part of the plaintiff? And sustained as a result of means that he had to have been misled or deceived to recover actual damages. Don't you have to prove that he did something so that these damages were actually sustained other than simply reciting that there's a variance here on the disclosure? I agree, Your Honor, to the extent that the standard requires causation. We disagree to the extent that it requires that Mr. Bailey's prove that he would have done something differently. The purpose of the GAAP insurance disclosures was to establish that Mr. Bailey's voluntarily purchased GAAP insurance. Having failed to give the proper disclosures, Mr. Bailey's purchase of GAAP insurance is deemed involuntary by Congress. But he got something. He paid the money and got the GAAP. How is there a loss cause? There's no evidence that he chose to purchase GAAP insurance. He shouldn't be penalized for a charge that was involuntary to him. I thought he did not voluntarily choose the GAAP insurance? There's no evidence as to whether he did or did not. Congress treats a GAAP insurance as involuntary if the proper disclosures are not given. It's a legal standard as opposed to a factual one. Ms. Bailey, this is Judge Aldisert. If we accept your position, would that not be contrary to the other five courts of appeals who have met this issue and the one court of appeals that stated in DICTA? Yes, Your Honor. It would be contrary to those decisions. However, I don't believe that those courts were confronted with the full legal framework that is present here, including, first, the official position of the joint regulatory agencies that an understatement of the finance charge causes an overcharge to the borrower. That's a position that they've held since 1979 that they still hold today and that goes well beyond just a statement of their enforcement powers. It tells us how they view the understatement of the finance charge and what they view as the injury that is sustained as a result of it. Isn't there a difference, though, between a private cause of action and regulatory enforcement? I agree that there are differences, but I believe that those differences favor us here because the primary purpose of the enforcement is to deter violations and to require compliance. On the other hand, the primary purpose of the civil cause of action of actual damages is to compensate borrowers. How do you see the relationship between the statutory damages section of 1640 and the actual damages? How are we supposed to view this? And the legislative history doesn't appear to support your view in this regard as well. We view them as complementary, Your Honor. We view the actual damages for the understatement of the finance charge as the difference between the stated charge and the actual charge. We view the statutory damages as an additional deterrent that is designed to encourage creditors not to violate the act. We view them as complementary. I believe that Sky Bank has viewed the statutory damages as liquidated damages that eliminate the need for actual damages, and there's no support for that. With respect to the legislative history, another key legal component that did not appear before the other courts is that in 1995, there was a bill that would have expressly added a detrimental reliance requirement to the act. That bill was never passed and did not even appear to make it out of committee. One of the main proponents of the bill is the legislator whose legislative comments have been relied on heavily that stated that detrimental reliance is required to state a cause of action for actual damages. And though in addition to being suspect under Exxon, those comments are facially invalid because we know, and Sky Bank agrees, that TILA creates many substantive violations that give rise or cause actual damages without regard to detrimental reliance. If we were to adopt those comments at face value, we would eliminate the actual damages for substantive violations. You make reference to these so-called substantive violations as opposed to the disclosure violations. Assuming you're right on that, isn't it possible to distinguish between the two and say on certain violations such as rescission and a few other matters, actual detrimental reliance may not be required in those instances but may be required on the pure disclosure matters? I believe it is possible to distinguish that. The parties agree that substantive violations cause actual damages without detrimental reliance. And the parties also agree that there may be some disclosure violations that do not cause actual damages without detrimental reliance, so-called technical violations. The question is where the material disclosure violations, those violations of the key cost of credit disclosures, where do those fall? Our position is that those are substantive violations that cause actual damage. Does the word material appear in 1640? No, Your Honor. No specific actual damage standard appears in 1640. 1640 gives us a general standard that's applicable to the myriad violations of the Truth in Lending Act. Where do you find, you're importing it from somewhere else then, are you not? The term material disclosure is found in 1602U, 15 U.S.C. 1602U. It's the definitional section. And the material disclosures have an import far beyond merely the rescission context. The materiality is a concept that's embedded in the Truth in Lending Act. The material disclosures primarily are those key cost of credit disclosures that the consumer requires to make an informed decision. Not only are they treated differently in rescission, they're also the primary disclosures that give rise to statutory damage and also the primary disclosures that must be segregated from everything else and highlighted for the consumer in the disclosure statement. Aren't you arguing that the measure of damages should be the difference between the stated charge and the actual charge? Yes, Your Honor. That is what we're arguing. But Congress didn't say that, did they? They said loss. I believe Congress's words are actual damage sustained as a result. How can we read that to mean the difference between a stated charge and actual charge? And couldn't Congress, if that's what they meant, they could have used those terms, couldn't they? Your Honor, there are two questions there, I believe. First, I believe that Mr. Valley sustained actual damage as a result of the understatement of the finance charge because the charge is deemed involuntary and either should have been. Where is that? Where do you get that? In 12 CFR 226.4 Section D, it sets forth the disclosures for credit insurance, property insurance, and debt cancellation insurance. Those are the disclosures that are required to exclude those charges from the finance charge. And for credit insurance and debt cancellation insurance, the key fact is that the disclosures must be voluntary. And that fact has to be disclosed. The disclosure must be voluntary? I'm sorry, the purchase must be voluntary. The purchase must be voluntary. And that fact must be disclosed in writing to the consumer by the creditor, and the consumer must sign the disclosure. Where does it say, kind of the next piece would be, actual damage does not occur when something is involuntary? That's the next piece in that logic, isn't it? What says that? There is, in our brief at page 53, our appellant's brief, we cite the comments of the regulatory agencies in their joint statement, which reflect that credit insurance is deemed not to have been voluntary. And the same because the credit insurance disclosures and the debt cancellation disclosures are virtually identical. The same would hold true for debt cancellation. The other piece of this is – Hold on a second, hold on a second. Judge Aldister, do you have any questions? No, no. I was just trying to – I was just trying to page 53 of our brief. Okay, good. Judge Rundell, any other questions? No, okay. Your Honors, thank you. Thank you, Ms. Brady, very much. Mr. Brice? Good afternoon. Good afternoon, Your Honors. May it please the Court, Martin Brice, and with me is Alan Koplinsky of the Ballard Spar firm for the appellee defendant, Sky Bank. This matter should begin and end with the language of the statute, 1640A1, which expressly and unambiguously provides for the award of, quote, any actual damages sustained as a result, close quote, of the title of violation. That's what the statute says, and it controls here. Key to that consideration is the fact that the statute uses the term any actual damage. It doesn't say the actual damage. It doesn't say automatic actual damage. It doesn't say mandatory actual damage. It says any actual damage. And like every circuit court that has looked at this issue, the word any plainly denotes that there may be none. The statute further uses the term as a result. And read in context of a disclosure violation, and that's what we have here, that plainly means reliance. It cannot mean anything else. Now, Valleys, Ms. Brady would have the court read out of the statute the as a result language. Make no mistake about it, it's Valleys' position here that actual damages are mandatory and automatic. In the case of an under or a nondisclosure, what the appellant would have this court do is award the underdisclosed or nondisclosed finance charge, period. End of story. You need go no further. And that's exactly what they want. The $395, it's their case, and this court ruled in Valleys I, was improperly excluded from the finance charge. Therefore, that's the measure of actual damages. You need go no further. That's their position. And that position plainly reads the as a result language out of the statute. What about the argument that is made by Ms. Brady, looking at page 53 of the brief, that talks about the fact the creditor shall take appropriate corrective action for the overcharge resulting from the understated finance charge? Could you not read the provision as saying, by virtue of an understated finance charge, there is an overcharge resulting? Well, both the correction of errors provision and the regulatory enforcement provision use that language. They require in certain circumstances, and they're not mandatory, but I'll get to that in a moment, the return of the excess charge above that disclosed. That, however, is not what 1640A1 provides. Congress very specifically used different language in 1640A1, 1640B, which is the correction of errors provision, and 1607, which is the regulatory enforcement provision. 1607 and 1640B use that in excess of the charge actually disclosed language. And 1640A1 contains no other language, no such language. And the cases or legion from the United States Supreme Court that where Congress uses different language in different sections of a statute were not to presume it meant the same thing. In fact, were to presume the opposite, that it meant something different. And I think, Judge Rendell, you put it well. If Congress had wanted in 1640A1 to mandate the return of the undisclosed or underdisclosed finance charge, it could have put that language in 1640A1. It knew how to put it in 1640B, it knew how to put it in 1607, and it didn't put it in 1640A1. Furthermore, 1640B and 1607 are not mandatory. The correction of errors provision, 1640B, a creditor doesn't have to choose to utilize that. 1607, the regulatory enforcement provision, it is not mandatory either. Under that statute, the agencies need only require restitution if there's a pattern, practice, negligence, or willful violation of the statute. Furthermore, the statute provides that there shall be no restitution if it would have a significant adverse impact on a creditor. And there's no such restraints in 1640A1. They're plainly different statutes with different purposes as every court of appeals who have considered them have held. Mr. Albright, you've mentioned that you heard my question put to your friend and you heard her answer. Would you care to comment on her response? Well, I'll comment on a few things Ms. Brady said, Your Honor. First, absolutely. This court would be holding directly contrary to the nine circuit decisions on this issue. And every circuit court that has looked at this issue has held that, in fact, reliance is a requirement and there's simply no basis for holding otherwise. Ms. Brady relies on a statement of policy from the regulatory enforcement agencies issued in 1979. Two problems with that. First, it was issued with respect to the agency's authority under 1607. The agencies weren't purporting to issue any opinion or guidance with respect to 1640A1. And at the time in 1979, 1607 didn't have the restitutionary language it now has, the restitutionary language that 1640A1 most certainly lacks, Your Honor. So I don't think Ms. Brady answered your questions. And I think, frankly, it's impossible for her to answer them, given the plain language of the statute. Now, sir, I'll follow that up with this. If we accept her interpretation here, would our decision be contrary to the other courts of appeals who have ruled on this? Absolutely, Your Honor. Make no mistake about it. It would be contrary. Would there be a conflict between the circuits then? Yes, Your Honor. Absolutely. Now, I'll take this point to mention that this court has never dealt with this issue. Valleys and Ms. Brady argue that this court has in a number of other cases. Dvodsky, which you were on panel. But they involve statutory damages, right? Yes. Frankly, that's the plain and short answer, Your Honor. Schnell dealt with statutory damages. Enry Community Bank dealt with rescission and statutory damages. And, in fact, in Enry Community Bank, I believe you were on that panel, Judge Aldershot, the court went out of its way to say this issue isn't before us and we're not deciding it. This court has never decided this issue. But on nine other occasions, circuit courts have, and they've all uniformly held, along with at least a dozen or more district courts, that reliance is required. Now, again, make no mistake about it. What the plaintiff wants here is automatic actual damages. And in an effort to lessen that impact, they create a few false analogies, if I may put it that way, and build a few straw men, if I may use that cliche. So, for instance, you hear about substantive versus disclosure violations. And Ms. Brady several times this morning kept referring to the, quote, overcharge, close quote, in this case. Well, again, that's a false analogy. HOPA, for instance, if a lender charges, say, a $1,000 prepayment penalty that's illegal under HOPA, well, obviously, that $1,000 is the actual damages sustained as a result of the TILA and HOPA is a part of TILA violation because the statute prohibited that $1,000 charge. There's no reason to require actual reliance. There are no court has required the same. But this isn't that case. This is a disclosure case. Now, they try to create, as I said, an overcharge here. But the fact of the matter is, and this is on the record, the contract price here was some $31,000. And that included a number of different line items, including a charge to National Auto Care for $1,790. And the GAAP waiver was part of that. And as I said, that all adds up to $31,000. And, in fact, at page 54 of the record, they have a nice table that gets you to that $31,000. No matter what you do with that GAAP charge, that $31,000 figure doesn't change. If it had been disclosed correctly as a separate line item, you still have that $31,000 figure. This Court's already ruled it was incorrectly disclosed. You still have that $31,000 figure. There's never been any contention here that Mr. Vales didn't get the GAAP coverage. He signed the waiver agreement that provided that it was voluntary. The problem is we didn't give it to him. But, again, leaving all that aside, A plus B equals C. C never changes. This $31,000 figure never changes. They simply do not have a substantive violation, as in, for instance, the HOPA example, or the other statutory sections they mentioned, like 1615. It is simply not the same thing. We have a disclosure case here. And when you're dealing with a disclosure case, that, as a result, language can only have meaning if there was reliance, period. Now, the other item they argue is this material versus nonmaterial. And, Your Honor, Justice Skerogy, you put that well. That's not in 1640. They pull that, really, out of Section 1635 of TILA, which governs rescission and gives you a continuing right to rescind when you haven't received a material disclosure. So, certainly, if you were seeking to rescind, and, again, that only applies to real case, certainly, if you were trying to rescind a mortgage loan, you'd have to prove you didn't get a material disclosure. That simply has nothing to do with this case. It's not in 1640A1. It has no bearing or relevance whatsoever here. In Valleys 1, this Court didn't require Valleys to show that the gap issue was material or nonmaterial. It simply doesn't appear. It's purely manufactured. One of the other things that plaintiffs say is that requiring the detrimental reliance in these matters makes it extremely hard both to plead and to prove a violation and actual damages, which brings up the issue. First, you may want to comment on that. Second, it brings up the issue of what test, if any, we should adopt. Some of the circuits have adopted tests, like Peter's case. I think in the Eighth Circuit there have been some others. Do we need a test? Is the Peter's test the right test, or should it be something that's not quite as rigorous, more open, perhaps? Well, Your Honor, proving actual damages under this reliance standard will be difficult, yes. No question about it. However, Congress from the get-go recognized that, and that's why we have the statutory damages provision that does provide for automatic statutory damages. The difficulty of proving actual damages supports the district court's decision here and supports our position, and every court has recognized that, and the legislative history is replete with that. We have a statutory damages provision precisely because it's difficult to prove actual damages, and the appellant's argument here ignores that statutory structure. Their argument would leave us with two sets of automatic damages, automatic actual damages, and automatic statutory damages, and that simply flies in the face of the express language of TILA and the overall statutory structure. Now, as to the standard, below, Your Honor, the plaintiff never offered any reliance standard whatsoever. They didn't brief it. They offered no argument on it. They didn't say a word about it. Their position was entirely, we don't have to show any reliance, period. The district court, following a number of courts, adopted basically a three-prong test, and the dispute really comes into the third prong, and that is whether or not a plaintiff has to show that it would have gotten better credit or more favorable terms, and a number of courts have said that, whereas a number of other courts have said, well, the plaintiff can also show that it would have walked away from the table. Frankly, Your Honor, given the fact that the plaintiff never disputed the standard below, I submit that the district court's ruling in that respect was dicta, and there's no need at this point for the court to issue a standard. That could be left to a later day in the district court in another case where the parties can hash that out. Now, should the court choose to adopt a standard, Your Honor, I think is a matter of plain meaning and common sense. A plaintiff should be able to argue that it would have gotten up, he or she would have gotten up and walked away from the table. It simply makes sense under the language. The reliance test comports with the purposes of TILA, which is to ensure a meaningful disclosure. I think what flows from that is the idea that a plaintiff, a borrower, could choose to go out and shop around and get better credit or could simply decide, I don't want a truck. I don't want the loan, period. And that's what a number of courts have held. I don't think any court has expressly dealt at length with the appropriate standard because it appears that, as in this case, borrowers haven't really bothered to dispute or argue what the appropriate standard is. They've basically taken like valleys here, an all or nothing approach. I don't want to have to show any reliance, period. And again, Your Honors, there's simply no support for that. Good. Any, Judge Aldister, any further questions? Well, I just wanted to make clear, it's my understanding as to statutory damages, that issue was settled on the basis of the statutory maximum, the class getting $500,000 and valleys $1,000. Is that correct? Yes, Your Honor. That stipulation which was entered as an order by the district court is in the statute correctly. We did expressly in that stipulation make clear, however, that we were not conceding actual damages. That remained the only issue and that was the issue decided by the district court. Thank you, Your Honors. Judge Rendeau, any questions? Nothing further. Good. Thank you, Your Honors. Good. Thank you very much, Mr. Bryce. Ms. Brady? Yes, Your Honor. First, there already is a conflict between the circuits. Those that have held the Peters standard, the four-prong test applies, would find that a consumer who met the other standard, the less stringent Petroff-Klein standard, they would find that that consumer had not been damaged. There are two standards out there already. There is a conflict in the circuit. And, in fact, the Peters case, the plaintiff did attempt to prove detrimental reliance under the four-part standard. Did you urge a standard in the district court? I did not. No, Your Honor. We did not urge a detrimental reliance standard. But I do believe it goes to the presidential value of those circuit court  All right. What are those two standards, Ms. Brady? The first standard, Your Honor, is that the consumer must have read the disclosures, understood the disclosures, proved that he would have sought other credit had the disclosures been accurate, and proved that had the disclosures been accurate, he would have obtained other credit. Since 1974, no consumer has ever satisfied the standard that either party was able to find. It renders the actual damage provision illusory. The second standard is the one stated in Petroff-Klein and in Ray Farrell, which is that a consumer must establish that he read the disclosures, understood the disclosures, and would have walked away had the disclosures been accurate, which, while it doesn't impose as high a standard as that from the Peters case, it does impose a standard that is likely not to be able to, it's likely to undermine any potential class action for actual damages. And Congress did recognize in Section 1640A the possibility of an actual damages class action. The second point. We consider a conflict if the decisions differ. What you are saying that there are, there seems to be a distinction as to the ratio dissidenti on how they reach that conclusion. Is that fair? Your Honor, I would state it differently. I would say that the plaintiff in Peters, who was denied actual damages, would have obtained actual damages under the standard set forth in Petroff-Klein and in Ray Farrell. I believe it's not merely a difference in reasoning, but a significant difference in the result. The second point I'd like to make is that. By the difference in the results, are you saying that one of these decisions that we are discussing held that reliance was not a necessity? They both held that reliance was a necessity. The difference. And that is the issue that concerns us here. Does that not? Yes, Your Honor. Thank you. We'll give you another minute or two. Thank you. I also wanted to make the point that the regulatory enforcement policy is not a dead policy from 1979. We stated more recent official statements of the policy, which again state that an understatement of the finance charge constitutes a reimbursable overcharge. So this is a vital, viable enforcement agency determination that's entitled to significant weight here. The issue of whether the substantive violation versus the disclosure violation is a straw man. Many courts have held that detrimental reliance is an element of a cause of action for actual damages. So they have failed to recognize the distinction between a substantive violation and other violations. They failed to recognize that any violation ever causes actual damage without detrimental reliance, which again goes to the precedential value of those cases. And as to 1640, which is the voluntary correction of errors, the purpose of that provision is to provide the creditor an economic incentive to comply with the act and correct its own errors. Under Sky Bank's theory, it's as if there's a $500,000 cap written into that provision. It's as if that provision says, creditors, you have an economic incentive to comply up to $500,000, but for any error above that, you now have a disincentive. Because if the only threat under the act is the statutory damages of $500,000, there is absolutely no incentive for a creditor to voluntarily correct errors in excess of $500,000. Ms. Brady, thank you very much. The case was very well argued by both counsel. We will take the matter under advisement. I think it would be useful for the court to have a transcript of the argument. Please check with the clerk's office and share the cost of that. We would be most grateful. Thank you very much. Thank you, Your Honors. The matter will be taken under advisement. The next matter is U.S. v. Stern, Dobley and Dobley. Thank you.